## HARTSHORN *v.* SCHOFF & A.

Selectmen, having power to appoint some one to act as a fence-viewer upon a special occasion only, appointed a person to act generally as a fence-viewer. *Held*, that the person so appointed could legally act upon the special occasion,—the appointment being good *pro tanto*, although invalid as to all other occasions.

The fact that the certificate of a fence-viewer's oath of office was not made, nor his appointment and the certificate of his oath recorded, until after an adjudication by the board, furnishes no defence to a suit based on such adjudication, if the defendants, being notified, appeared at the hearing before the fence-viewers without objecting to their official competency.

Under an application to the fence-viewers to examine the fence assigned to the petitionees, to adjudge the same to be insufficient, and to order the petitionees to cause the same to be put in repair according to law, the fence-viewers may limit the time for repairing the fence.

The fence-viewers ordered the defendants to put their fence in repair, accord-

ing to law, within fifteen days. The defendants not complying with this order, the plaintiff built an entirely new fence, and the fence-viewers, upon notice to the defendants, appraised the cost. Plaintiff sued to recover double the cost. There was no offer to show that the building of the new fence was an unreasonable or extravagant method of "putting the fence in repair according to law." *Held*, that there was at least a *prima facie* presumption that the fence-viewers made the appraisal upon the basis of their previous order, and allowed only such amount as was reasonably necessary to put the fence in repair according to law.

In an action of assumpsit, originally commenced against three defendants, to recover double the cost of building a fence assigned to them by the fence-viewers, the plaintiff (under Gen. Stats., ch. 207, sec. 17) may, before the evidence is closed, strike out two of the defendants; and, in the absence of a plea in abatement, may recover judgment against the remaining defendant upon the cause of action originally declared on.

ASSUMPSIT, by Lucius Hartshorn against Seneca, Lydia, and William Schoff and Clark Knapp, for work and labor and materials, and for money had and received, and on an account annexed for $281.66. The specification was for double the cost of building fence alleged to have been assigned to the defendants to build, by the fence-viewers, as their part of the division fence, together with the expense of the fence-viewers. Plea, the general issue.

The plaintiff introduced copies of the records of the applications to the fence-viewers, the proceedings thereon, the division of the fence, and the time fixed for building it, the subsequent insufficiency of the defendant's fence, and the appraisal of the fence built by the plaintiff on the defendant's part.

It appeared that the fence-viewers who acted in this case were Simonds, Ockington, and Crown. Ockington was appointed June 13, 1868, in place of the present plaintiff, who had been chosen at the preceding March meeting. He was appointed because the plaintiff was disqualified by interest to act in this case; but his appointment was in the usual form, reciting a vacancy in the office, and appointing him generally to be a fence-viewer, without limiting him to act in the place of the plaintiff on this occasion. Crown was appointed June 15, 1868, in place of one Johnson, who, after being duly appointed and qualified as fence-viewer, declined serving. It appeared that Ockington was sworn on the day of his appointment, and the certificate made, but neither the appointment nor certificate was recorded until March 14, 1871. Crown was sworn the day after his appointment, but the certificate of the oath was not made upon the appointment until April, 1871, and not recorded until April 26, 1871. The defendant, Seneca Schoff, appeared and attended at all the meetings of the fence-viewers upon the several applications of the plaintiff, and made no objection to any of the proceedings. The defendants, upon

the trial of this action, objected that Ockington's appointment was not legally made, and that Crown and Ockington had no power to act until their appointments and the certificates of their oaths were recorded; but the objections were overruled, subject to exception. In the application to the fence-viewers to examine the fence, assigned to said Seneca Schoff and others to be kept in repair, and to adjudge the same to be insufficient, the fence-viewers were requested to order the defendants to repair the same, according to law, but without any request to fix a time within which it should be done. At the meeting of the fence-viewers, on this application, on August 1, 1868, they adjudged the defendants' part of the fence to be insufficient, and ordered them to cause the same to be put in repair, according to law, within fifteen days from August 4, 1868. The defendants, upon the trial, objected that there was no request to limit the time for repairing the fence; but the objection was overruled, subject to exception.

The defendants having neglected to put the fence in repair, the plaintiff, after the expiration of the fifteen days, built an entirely new fence. The subsequent appraisal by the fence-viewers recites the previous order, and affirms that " said repairs have not been made " by Seneca Schoff and others, but that after the expiration of the fifteen days " it was made by said Lucius Hartshorn at his own expense, and the cost of which he prays us to appraise." The appraisal then proceeds to aver that the fence-viewers, upon a hearing, " adjudged that part of said fence so put in repair by the said Lucius Hartshorn  *  *  *  * to be sufficient;" and that they " appraise the cost of making said fence at the sum of one hundred dollars." The defendants, upon the trial, objected " that, although the order was to put the fence in repair, the plaintiff had built an entirely new fence, for which he was seeking to recover double the appraised value." The objection was overruled, subject to exception. This action was commenced against four defendants.

During the pendency of the suit and before the trial, Lydia Schoff died, and before the evidence was closed, the plaintiff, by leave of court and against the objection of the defendants, amended his writ by striking out the names of William Schoff and Clark Knapp, and proceeded against Seneca Schoff alone. The defendant objected that the adjudication of the fence-viewers between the plaintiff and the four defendants, as shown by the proceedings, made a joint debt against all of the original defendants, and that Seneca Schoff would not be severally liable; but the court overruled the objection, and the defendant excepted.

Verdict for the plaintiff, which the defendant moved to set aside.

*Ossian Ray, Whidden,* and *G. A. Bingham,* for the plaintiff.

*Fletcher & Heywood,* for the defendant.

SMITH, J. I. It is objected that the selectmen exceeded their authority in appointing Ockington to act generally as a fence-viewer, instead of limiting his power to this particular case.

If an agent " does what he was authorized to do, and something more," it will be good, so far as he was authorized to go, " if that part be distinctly severable from the remainder." In such case, the excess only will be void.    2 Kent's Com. 619 ; 1 Parsons on Contracts, 4th ed., 58.    Here the selectmen had authority under Gen. Stats., ch. 233, sec. 8, to appoint some one to act in this case.    They, in effect, appointed Ockington to act in this case, and in all other cases that might arise during the year.    " The line of distinction between the good execution of the power " of the selectmen, " and the excess," is easily drawn.

In the absence of any offer to show that Ockington was not one of the class of persons qualified to fill vacancies, we hold that he was duly appointed for this case, although he might not have legal authority to act in any other case.

II.  " Whenever a vacancy shall occur in any town office other than that of selectmen, the selectmen may, in writing, appoint some suitable person to the office, and his appointment and a certificate of his oath being recorded in the records of the town, he shall have the powers, perform the duties, and be subject to the liabilities of such office until another person shall be chosen and qualified."    Gen. Stats., ch. 39, sec. 6.    As the record required was not made till long after the hearing, Crown and Ockington were not, at the time of the hearing, fence-viewers *de jure.*    *Pierce* v. *Richardson,* 37 N. H. 306.

They were not shown to be officers *de facto,* there being no evidence that they acted as fence-viewers on any other occasions than those which are now the subject of controversy.    *Jaquith* v. *Putney,* 48 N. H. 138, p. 140.

If, therefore, the defendant, Seneca Schoff, is now in a position to object to the official competency of Crown and Ockington, the objection must be sustained.    But it is suggested that Schoff waived this objection by appearing at the hearing without objecting to the authority or qualifications of the fence-viewers.    The objection would undoubtedly be held to have been waived if it was shown that Schoff, when he appeared, knew of the defect.    See *Gallup* v. *Mulvah,* 26 N. H. 132 ; *Glidden* v. *Towle,* 31 N. H. 147.    An examination of the report leaves it somewhat doubtful whether the objectors in those cases were not regarded as having knowledge of the defect at the time of hearing.    But the principle of the decision in *Wilcox* v. *School District No. 1, in Lempster,* 26 N. H. 303, is broad enough to cover the present case, even if Schoff is regarded as having being ignorant of the omission to record the appointments and certificates.    In that case, the objection was taken, after verdict, that only one selectman attended at the drawing of a juror from the town of Croydon, who sat upon the trial.    The facts all appeared on the town records of Croydon, but the party objecting had no suspicion of the irregularity until after verdict.    Woods, J., said,— " The fact constituting the objection appeared on the public records of the town, open at all times to the inspection of the defendant.    He did not see fit to examine them to ascertain the legal qualifications of the jurors, and must therefore be taken to have waived the exception

which such examination would have enabled him to take at a time when the defect of the panel could have been cured." See, also, *Page* v. *Danvers*, 7 Met. 326; *Bodge* v. *Foss*, 39 N. H. 406; *Wentworth* v. *Farmington*, 51 N. H. 128. In the present case, an examination of the town records at the time of the hearing would have disclosed the omission which constitutes the ground of the objection now insisted upon. Under these circumstances, we think the defendant has waived the right to take this objection. The decision in *Ela* v. *McConihe*, 35 N. H. 279, is not necessarily in conflict with this result. In that case, the certificate of the oath was not required to be returned to court, or recorded, until after the hearing. Consequently there was, at the time of the hearing, no way in which the appellant could have discovered the existence of the objection by inspecting public records.

III. " The fence-viewers, upon application of either party, shall view any fence alleged to be insufficient, and if they judge it to be so, shall give notice to the delinquent party to build or repair the same within a time by them limited." Gen. Stats., ch. 128, sec. 6. Under this statute, the duty of the fence-viewers to limit a time for repairing or building is a necessary legal consequence of an adjudication that the fence is insufficient; and their authority in this regard does not depend upon the insertion, in the application, of an express prayer for such limitation. A plaintiff may recover costs, though the claim stated in his writ is only for damages; and an execution may be issued upon a judgment, though the writ contains no prayer to that effect. If, in *Fairbanks* v. *Child*, 44 N. H. 458, it was intended to intimate a contrary view respecting the construction of this statute, we must differ from that opinion.

IV. Under the order " to put the fence in repair," the defendants had a right to make the fence sufficient in any manner that they pleased. Upon their neglect to comply with the order, the plaintiff might " put the fence in repair " in any reasonable manner; " and, so far forth as the work done by him was necessary to make the fence a lawful one, it was competent for the fence-viewers to allow the expense." It is certainly conceivable that the old fence might have been in such a dilapidated condition that the only reasonable and economical way " to put the same in repair, according to law," was to build " an entirely new fence." If building a new fence was an unnecessarily expensive mode of making the fence on that line sufficient, it was the duty of the fence-viewers to allow the plaintiff only such portion of the sums actually expended as would have been required to do what was reasonable and necessary " to put the fence in repair, according to law." The adjudication of the fence-viewers conclusively establishes the fact that the new fence built by the plaintiff was a sufficient and lawful fence. The presumption is, that the fence-viewers made the appraisal on the basis of their previous order, and allowed only such amount as was reasonably necessary " to put the fence in repair, according to law." See *Fox* v. *Beebe*, 24 Conn. 271; *Guyer* v. *Stratton*, 29 Conn. 421. The expression,—" the cost of making said fence,"—is

to be construed in connection with the other language of the appraisal, which seems to indicate that making the new fence was considered by the fence-viewers as a reasonable compliance with their previous order; in other words, as " putting the fence in repair, according to law." As there was no offer to show that the building of the new fence was an unreasonable or extravagant method of " putting the fence in repair, according to law," we need not determine whether evidence could have been received to rebut the presumption that the fence-viewers made the appraisal upon a proper basis.

V. " In all actions where there are two or more defendants, the plaintiff may amend the writ before the evidence is closed by striking out the name of any defendant, on paying his costs to that time." Gen. Stats., ch. 207, sec. 17.

Under this statute, the plaintiff was properly allowed to amend by striking out two of the defendants; and the exception to the allowance of the amendment must therefore be overruled. But the remaining defendant has raised the further objection that the plaintiff, after making the amendment, cannot maintain the action against him alone; and this objection has been urged by counsel with great confidence.

For the purposes of the present case, we may assume that it was not the intention of the legislature to give to the plaintiffs the arbitrary power of selecting the defendants against whom they preferred to take judgment, not allowing the defendants thus selected to raise the objection that the other defendants, who had been struck out by the plaintiff, should have remained joined with them. On the contrary, it may be assumed, for the present, that the object was to relieve the plaintiffs from the common law consequences of inserting in the writ the names of the defendants who were not in fact liable; and that, if a plaintiff erroneously strikes out a defendant who is jointly liable, the remaining defendants have the same right to object on account of the nonjoinder of that defendant as they would have had if the action had been originally commenced against them alone. Upon this view, which is obviously the construction most favorable to the defendants, the writ must, after the allowance of the amendment, be considered as if the names thus struck out had never been introduced (see PARSONS, C. J., in *Prescott* v. *Tufts*, 4 Mass. 146, p. 147); and as the plaintiff thus, in effect, commences a new action, the remaining defendant must have the right to withdraw his former plea, and plead anew either in bar or in abatement. The defendant in the present case did not, however, see fit to exercise this privilege; and the trial proceeded upon the plea of the general issue, which had been filed prior to the allowance of the plaintiff's amendment. The defendant then objected " that the adjudication of the fence-viewers  *  *  *  *  * made a joint debt against all of the original defendants, and that Seneca A. Schoff would not be severally liable." This objection was in the nature of a motion for a nonsuit, on the ground of the nonjoinder of parties who should have been made codefendants; and in argument an attempt has been made to support it on the ground of variance also. Neither ground is tenable. It is

extremely well settled that this objection of nonjoinder cannot be taken by a motion for a nonsuit. 1 Chitty's Pleading 46; Gould on Pleading, 1st ed., sec. 114. No motion has been made in arrest of judgment, nor could such a motion be sustained. Notwithstanding some adverse decisions in other jurisdictions (see notes to *Rice* v. *Shute*, 1 Smith's Leading Cases 287), we regard the rule in this State as established in *Nealley* v. *Moulton*, 12 N. H. 485. Upon the views there expressed, Seneca Schoff, by omitting to plead the nonjoinder in abatement within a reasonable time after the allowance of the amendment, waived the right to raise this objection at any subsequent stage of the case. We are not now called upon to consider whether this objection was well founded in fact. It might turn out, upon inquiry, that the fence-viewers had no jurisdiction over the other defendants; that the adjudication, being void as to those defendants, did not constitute a joint debt against all the original defendants, but created a liability on the part of Seneca Schoff alone; and that the plaintiff, therefore, did not err in striking out all the defendants except Seneca Schoff.

To the argument that there was a variance, there are, at least, two answers: First, this objection does not seem to have been taken at the trial; second, the allowance of this objection would defeat the purpose of the statute permitting such amendments. "The very object of the statute is to provide for a judgment against a part only of those who may be joined in an action, and to relieve against the operation of the general rule upon this subject." WOODS, J., in *Burt* v. *Stevens*, 22 N. H. 229, p. 232. It would be conferring an illusory benefit upon a plaintiff to allow him the privilege of striking out part of the defendants, if, after going through this process, he could not have judgment against the remaining defendants. Such an idle mockery could not have been contemplated by the legislature. To give effect to the statute it should be held that the plaintiff, after striking out the names of the other defendants, can, in the absence of any plea in abatement, recover against Seneca Schoff alone, upon the cause of action originally specified. *Curtis* v. *Baldwin*, 42 N. H. 398, was an action of assumpsit against the Union Stove Co. as principal, and seven individuals as sureties, upon a joint and several note. The officer made no return as to the Union Stove Co., and returned "*non est*" as to three of the sureties. The plaintiff, after discontinuing as to the Union Stove Co. and the three sureties, was permitted, against objection, to introduce in evidence the note originally declared upon, and recovered judgment thereon against the four remaining defendants. *Flanders* v. *White Mountains Bank*, 43 N. H. 383, was assumpsit against three defendants upon a joint and several note. The plaintiff, being unable to prove the signature of one of the three signers, was permitted to strike out the name of that signer, and recovered judgment against the two remaining defendants, BELL, C. J., saying,—"To give effect to this statute, it must, we think, be held that the plaintiff may recover against the remaining defendants upon the same cause of action originally declared upon." The fact

that the notes in those cases were joint and several, does not distinguish the decisions in principle from the case at bar.  Although the plaintiffs in those actions might have sued any one signer separately, yet, by suing all in one action, they elected to treat the note (for the purposes of that action at least) as a joint liability.  And it is very clear that the " several" liability of each signer could not have justified the court ·in rendering judgment against four out of eight signers in *Curtis* v. *Baldwin*, or two out of three in *Flanders* v. *Bank*.  Those decisions were evidently made under the statute, the court adopting the construction just indicated.

There is, perhaps, another way in which the plaintiff might have removed all possibility of objection on the score of variance.  When he amended his writ by striking out part of the defendants, he might have been allowed to make a corresponding amendment of his declaration so as to allege only a sole liability on the part of Seneca Schoff. Under the declaration so amended, if the plaintiff had introduced evidence of a joint liability on the part of Seneca and the other original defendants, it is clear, upon authority, that the objection of variance could not have been sustained.  1 Chitty on Pleading 46.  But, under the judicial construction heretofore given to the statute, the plaintiff was not required to go through the form of amending his declaration.*

We have considered the case as though the plaintiff's specification had been originally incorporated in the declaration.

It is unnecessary to inquire whether there are other answers to the objection of variance.

*Judgment on the verdict.*

---

* In *Woodbury* v. *Woodbury* (decided Merrimack county March adjourned term, 1864), the writ contained only a count for money had and received. The plaintiff proposed to prove under it a joint note for $275.  The question of variance was raised upon a motion to amend by inserting the special count set forth on pages 11 and 12, 47 N. H., and a count for an account stated.  BELL, C. J., in delivering the opinion of the court, said,—" Here the action *is* for money had and received, and the plaintiff asks leave to amend by stating such special agreement.  As the proof of the special agreement is admissible under the general count, it must be for the same cause of action, and being so, there is no objection to an amendment setting it forth at length.

" It seems a needless amendment, as well on the principle of this decision as on the ground that the defendant was an original promissor of the note described in the amendment, which would be evidence under the count for money had and received."

REPORTER.